UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEVERLY JACKSON,<br>    Plaintiffs,<br><br>v.<br><br>CONNECTICUT STATE DEPARTMENT OF PUBLIC HEALTH, RAUL PINO, and ADRIENNE ANDERSON,<br>    Defendants. | No. 3:18-cv-1482 (MPS) |

## **MEMORANDUM OF DECISION**

Plaintiff Beverly Jackson brings this action against the Connecticut State Department of Health ("DPH"); Raul Pino, the Commissioner of DPH; and Adrienne Anderson, an investigations supervisor with DPH. (ECF No. 1.) She alleges that the Defendants violated her rights under the First Amendment by issuing a cease and desist order accusing her of practicing medicine without a license and directing her to refrain from "engaging in the Nedicine sacramental rites of [her] religion." (ECF No. 2 at 1.) She filed an emergency motion for a preliminary injunction together with her complaint. (ECF No. 2.) She seeks a declaratory judgment that the Connecticut statute governing the practice of medicine or surgery, Conn. Gen. Stat. § 20-9, is unconstitutional as applied to her and an injunction preventing the Defendants from enforcing the statute through the cease and desist order. (ECF No. 1 at 4; ECF No. 2 at 9.) The Defendants oppose her motion for preliminary injunction and move to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted. For the reasons explained below, the motion is GRANTED. Ms. Jackson's motion for preliminary injunction is DENIED, and the complaint is DISMISSED with prejudice.

## I. Background

### A. Factual Allegations

Ms. Jackson's complaint contains few factual allegations. She states that "the Connecticut Medical Board issued [her] a cease and desist order that is violating [her] religious rights protected under the First Amendment of the United States Constitution." (ECF No. 1 at 2.) As a result of the cease and desist order, she is "unable to worship God according to the dictates of [her] own heart because the Defendants have ordered [her] to stop practicing the spiritual tenets of [her] religion in the ministry of healing that Jesus Christ commanded [her] to do." (*Id.* at 3.) Although Ms. Jackson does not describe the basis of the cease and desist letter in her complaint, her motion for preliminary injunction explains that she is "a Nedicine physician licensed nationally to diagnose, treat, and prescribe sacred rites related to faith-based Nedicine." (ECF No. 2 at 8.) She alleges that the Board "falsely claimed that" her practice of "Nedicine" constituted the "unlicensed practice of medicine in violation of Conn. Gen. Stat. § 20-9." (ECF No. 2 at 3.) She filed a request with the Connecticut Freedom of Information Commission. (*Id.* at 3–4.) She alleges that the Commission issued a "final decision" indicating that DPH had "no records containing any evidence that [she] engaged in the unlicensed practice of medicine . . . ." (*Id.*)

### B. Statutory Background

"The Connecticut General Statutes provide a comprehensive regulatory scheme overseeing the practice of medicine and surgery in Connecticut." *Jackson I*, 2016 WL 3460304, at *2. DPH is tasked with reviewing and investigating any complaints it receives about providers whose treatment does not meet the standard of care or who are practicing medicine without a license. Conn. Gen. Stat. § 19a-14(a)(10); *id.* § 20-13e. If DPH determines that there is probable

cause to conclude that an individual is practicing medicine without a license, it issues a statement of charges with the Connecticut Medical Examining Board ("the Board"). *Id.* § 20-13e; *id.* § 20-8a(g).[1] The Board then holds a hearing and issues a decision on the charges. *Id.* § 19a-10; *id.* § 20-13e(a). "Once the Board issues a final decision, that decision may be appealed to the Connecticut Superior Court pursuant to Conn. Gen. Stat. § 4-183(a)." *Jackson v. Connecticut Dep't of Pub. Health*, 2016 WL 3460304, at *2 (D. Conn. 2016) (hereinafter *Jackson I*). The Board may "issue an appropriate order to any person found to be violating an applicable statute or regulation, providing for the immediate discontinuation of the violation." Conn. Gen. Stat. § 19a-11. The Board may enforce the order by petitioning "the superior court for the judicial district wherein the violation occurred . . . ." *Id.*

### C. Administrative Proceedings

The same day Ms. Jackson filed her complaint, the Court ordered her to provide additional information about the challenged administrative proceeding to determine whether it could exercise subject matter jurisdiction over her claims. (ECF No. 9.) She provided the following information in response to the order:

On November 16, 2015, DPH filed charges with the Board alleging that Ms. Jackson engaged in "the unlicensed practice of medicine." (ECF No. 12 at 2.) The Commissioner of DPH notified the Board that its decision would be a "proposed decision" under Conn. Gen. Stat. § 19a-14, and that she or her designee would render a final decision. The Board held a hearing on the charges on February 2, 2016. (*Id.* at 10). On May 16, 2017, the Board recommended that DPH order Ms. Jackson to cease and desist "from diagnosing, treating, operating for, and

---

[1] Within 15 days of the filing of charges with the Board, the Commissioner of DPH may notify the Board that its decision will be a "proposed decision and that the commissioner or his or her designee shall render the final determination in the matter." *Id.* § 19a-14(f).

3

or/prescribing for any injury[,] deformity, ailment or disease, actual or imaginary, of another person, for compensation, gain or reward, received or expected . . . until [she] has obtained a license as provided in § 20-10 of the Statutes." (*Id.* at 16.) DPH accepted the Board's recommendation on June 8, 2017, (*id.* at 8), and, after reconsidering its decision *sua sponte*, reaffirmed its acceptance of the Board's recommendation on July 28, 2017. (*Id.* at 7.)

### D. Prior Lawsuit

Ms. Jackson's response to the Court's order also describes an earlier lawsuit that she brought in this District against DPH, Adrienne Anderson, and then-Commissioner of DPH, Jewel Mullen. (*See* ECF No. 12 at 3 (citing *Jackson I*, No. 3:15-cv-750 (CSH) (D. Conn., May 19, 2015)).) The Court will take judicial notice of the allegations and the court's ruling on the defendants' motion to dismiss in that case.

Ms. Jackson filed her complaint in *Jackson I* on May 19, 2015, two years after DPH first began investigating her "Ňedicine-related practices." *Jackson I*, 2016 WL 3460304 at *3. As Judge Haight summarized

> Plaintiff's central claim is that the United States Patent and Trademark Office has sanctioned her practice of Ňedicine and that by issuing her a trademark, the federal government preempted Connecticut's ability to regulate Ňedicine, even if, as Defendants assert, "Connecticut finds that the practice of Ňedicine constitutes the practice of medicine defined by the Connecticut General Statutes" without the requisite medical license. Doc. 28-1, at 2. Furthermore, in "[b]uilding off this central premise, Plaintiff also alleges that the Defendants' attempt to investigate her practices violate[s] the Lanham Act, the Sherman Act, the Dormant Commerce Clause, and the Fourteenth Amendment's freedom to contract provision." *Id*.

*Jackson I*, 2016 WL 3460304 at *2. Her Fourteenth Amendment claim further alleged that DPH's issuing her a subpoena seeking records and a "threatening letter accusing her of criminal misconduct for unlicensed practice of medicine" was "interfering with her occupation," "depriv[ing] her of the freedom to practice her profession," and "invalidating her economic

4

freedoms." *Id.* at * 3, 7 (internal quotation marks and alterations omitted). She sought the following relief:

> Plaintiff requests the Court to issue a declaratory judgment that her certification mark preempts Connecticut from regulating the practice of medicine as defined by the Connecticut General Statutes. . . . She also prays for injunctive relief to prevent Defendants from enforcing Conn. Gen. Stat. § 20-9(a), which would otherwise bar her practice of Ňedicine. Finally, Plaintiff seeks $27 million in punitive damages and all other proper relief.

*Id.* at *3 (citations and quotation marks omitted).

The defendants filed a motion to dismiss for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim. Judge Haight granted the motion on June 20, 2016—two years before this lawsuit was filed—concluding that (1) Ms. Jackson had failed to effect service on the defendants, although he "might be inclined, in the interest of justice [and in light of her *pro se* status] to allow her one final attempt to make proper service," after deciding whether her claims were otherwise barred; (2) the court lacked subject matter jurisdiction under the Eleventh Amendment over Ms. Jackson's claims against DPH and her claims against Anderson and Mullen in their official capacities for damages; (3) Ms. Jackson failed to state a claim against Anderson or Mullen in any capacity, and her claims were barred by qualified immunity; and (4) Ms. Jackson's "entire Complaint [was] devoid of any claim upon which relief may be granted." *Id.* at *19. Judge Haight also summarized earlier lawsuits that Ms. Jackson and her protégés had brought in federal courts around the country raising similar claims without success. *Id.* at *4–*6. As a result, the court warned that "[f]urther litigation by Jackson of this matter, in this District or another, would be frivolous." *Id.* at *19.

**II.     Legal Standard**

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v.*

5

*Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckkett v. Bure*, 290 F.3d 493, 497 (2d. Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court must construe the complaint liberally and accept all factual allegations as true. *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

Under Rule 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the complaint's factual allegations as true, *id.* at 572, and "draw[s] all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "However, the tenet that a court must accept a complaint's allegations as true is inapplicable to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gonzales v. Eagle Leasing Co.*, No. 3:13-CV-1565 JCH, 2014 WL 4794536, at *2 (D. Conn. Sept. 25, 2014) (citing *Iqbal*, 556 U.S. at 678). Thus, "[w]hen a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant [a] defendant[']s motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).

The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v.*

*Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). To plead a cognizable legal claim, however, a *pro se* plaintiff must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

### III. Discussion

#### A. Ms. Jackson's Claims Against the Department of Public Health Are Barred Under the Eleventh Amendment

The Eleventh Amendment prohibits suits against a state absent the state's consent. *See Alabama v. Pugh*, 438 U.S. 781, 781–782 (1978). This sovereign immunity extends to state administrative agencies. *Id.* Regardless of the relief sought, then, the claims against the Department of Public Health must be dismissed. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought.").

#### B. Ms. Jackson's Does Not Allege *Any* Facts Involving Ms. Anderson

Ms. Jackson makes no allegations against Ms. Anderson. Indeed, outside document captions and certificates of service, she does not mention Ms. Anderson at all. Nevertheless, she purports to sue Ms. Anderson in her individual and official capacities. (ECF No. 2 at 1.)

To allege a claim under § 1983 against a state official in her individual capacity, a plaintiff must set forth facts showing that the official was personally involved in depriving the plaintiff of her federal rights. In addition, suits against government officials in their official capacities are generally barred under the Eleventh Amendment. *See Will v. Michigan Dep't of*

7

*State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). The Supreme Court has recognized a limited exception to Eleventh Amendment immunity for suits against state officials in their official capacities seeking only prospective relief. Under *Ex parte Young*, 209 U.S. 123 (1908) and its progeny, "sovereign immunity [does] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them 'immunity from responsibility to the supreme authority of the United States.'" *In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 371 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 160). This exception applies only when the state official against whom suit is brought has "some connection with the enforcement of the act that is in continued violation of federal law." *Id.* at 372–73 (quotation marks omitted). Ms. Jackson does not allege that Ms. Anderson committed any misconduct or describe Ms. Anderson's role with DPH except to list her as an "Investigations Supervisor." (ECF No. 2 at 1.) She does not provide enough information to allege plausibly that Ms. Anderson has a "connection with the enforcement of the act that is in continued violation of federal law." *In re Dairy Mart*, 411 F.3d at 371. The claims against Ms. Anderson in her individual and official capacities are therefore dismissed.

    **C.    Ms. Jacksons Claims Are Barred by *Res Judicata***

Ms. Jackson brings this suit seeking the same relief against the same defendants based on the same cause of action as she did in her earlier suit in this district. Her claims are barred under the doctrine of res judicata. "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *King v. Fox*, 418 F.3d 121, 131 (2d Cir. 2005).

"To determine whether res judicata bars a subsequent action, the Court must consider whether: (1) the first decision was a final judgment on the merits; (2) the litigants were the same parties; (3) the prior court was of competent jurisdiction; and (4) the causes of action were the same." *Jorgensen v. Sony BMG Music Entm't*, 310 F. App'x 419, 420 (2d Cir. 2008).[2]

Ms. Jackson's claims meet all of the foregoing requirements. First, the court in *Jackson I* expressly dismissed Ms. Jackson's claims "with prejudice." *Id*. Although the court also addressed issues related to its subject matter jurisdiction and service of process, it unequivocally held that her "entire Complaint is devoid of any claim upon which relief may be granted" and dismissed the case under Fed. R. Civ. P. 12(b)(6). *Jackson I*, 2016 WL 3460304, at *19; *see Overview Books, LLC v. United States*, 438 F. App'x 31, 33 (2d Cir. 2011) ("[T]he court's dismissal under Rule 12(b)(6) constituted an adjudication on the merits.").[3] Second, the parties in this suit are the same as those in *Jackson I* for purposes of res judicata or claim preclusion. Indeed, the parties are identical except that Ms. Jackson now sues Raul Pino instead of Jewel Mullen. Both were sued only in their official capacities as the Commissioners of DPH, and Pino is Mullen's successor in interest as Commissioner. Third, the *Jackson I* court was a court of competent jurisdiction.

---

[2] Although res judicata is an affirmative defense and the defendants did not assert it as a basis for dismissal, the Court may raise it on its own as a basis for dismissal to economize judicial resources as long as the Court has all of the relevant procedural facts before it, either in the complaint or through judicial notice, as in this case. *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) ("The failure of a defendant to raise res judicata in answer does not deprive a court of the power to dismiss a claim on that ground.")

[3] Judge Haight dismissed Ms. Jackson's claims against DPH on jurisdictional grounds and noted that he might give her a chance to cure the defective service if her claims were not otherwise barred. After reaching the merits of the individual capacity claims against Anderson and the official capacity claims against both Anderson and Mullin, he concluded that her claims against DPH failed as a matter of law and thus were otherwise barred. His dismissal was thus with prejudice.

Finally, the causes of action in *Jackson I* and this suit are the same. The complaints in both cases arise out of the same administrative proceeding, allege the same injury, and seek the same relief. Ms. Jackson filed her first action in this district on May 19, 2015. At that time, DPH had received a complaint about Ms. Jackson's "Ňedicine-related practices," conducted an investigation, issued her a subpoena, and sent her a "threatening letter . . . accusing her of criminal misconduct for unlicensed practice of medicine." *Jackson I*, 2016 WL 3460304, at *3.[4] She sought "injunctive relief to prevent Defendants from enforcing Conn. Gen. Stat. § 20-9(a), which would otherwise bar her practice of Ňedicine." *Id.* While her case was pending, DPH continued through the requisite administrative procedures to pursue its claims against her. It filed charges with the Board, which held a hearing on February 2, 2016. Ms. Jackson did not participate in the hearing. (*See* ECF No. 12 at 10.) The Board found against Ms. Jackson, and the Commissioner ordered her to cease and desist her practice of medicine without a license. (*Id.* at 8.)

Ms. Jackson now seeks another bite at the apple. While she previously challenged the administrative proceeding in anticipation of an adverse result, she now challenges that result. Just as in *Jackson I*, she asks the Court to enjoin the enforcement of Conn. Gen. Stat. § 20-9(a) because it is unconstitutional as applied to her. The only material difference is that, here, she claims the statute is unconstitutional for a new reason. In *Jackson I* she asserted violations of the Fourteenth Amendment's "freedom to contract" provision and the Dormant Commerce Clause; she now asserts that practicing "Ňedicine" is a component of her religion, and the cease and desist order

---

[4] While her first federal suit was pending, Ms. Jackson filed an "Emergency Motion for a Restraining Order," asserting that DPH "intend[ed] to issue [her] a cease and desist order . . . ." *See Jackson I*, 2016 WL 3460304, at *2 n.7. Her motion asked the court to enjoin the Defendants from enforcing the cease and desist order once it issued. *See* Emergency Motion for Restraining Order, *Jackson I*, 15-CV-750 (CSH), ECF No. 39. The court denied her emergency motion as moot after determining that her complaint did not state a claim for relief. *See id.* at *19.

therefore violates her rights under the First Amendment. Ms. Jackson never alleged that "Nedicine" was a religious practice in *Jackson I*. Her failure to advance that theory does not, however, overcome the principle of res judicata, which bars all claims that "were or could have been raised in the first lawsuit." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010). Her "new claims are based on different legal theories rather than different facts and, accordingly, could have been raised in the original complaint." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999).[5] Her claims are thus barred under the doctrine of res judicata.

I acknowledge that a plaintiff who brings a preenforcement facial challenge to a statute is not always precluded from bringing a postenforcement, as applied challenge to the same statute. "[D]evelopment of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016); *see also Bank of New York*, 607 F.3d at 919 ("Claim preclusion does not bar claims, even between identical parties, that arise after the commencement of the prior action."). Further, a plaintiff may renew her claims notwithstanding her having raised them in an earlier suit when the potential for injury was "too remote or speculative to afford relief at the time of [the] earlier suit. . . ." *Whole Woman's Health*, 136 S. Ct. at 2305.

In this case, no facts have developed since *Jackson I* that would allow Ms. Jackson to again challenge the application of Conn. Gen. Stat. § 20-9(a), and her claims did not "arise after the commencement" of the earlier lawsuit. Ms. Jackson did not bring a facial challenge in *Jackson I*. Instead, she alleged that DPH's efforts to enforce Conn. Gen. Stat. § 20-9(a) prevented her from

---

[5] Ms. Jackson brought constitutional claims under § 1983 in *Jackson I*. *See Jackson I*, 2016 WL 3460304, at *18. As a result, she was aware of that avenue for relief if she believed that the enforcement of Conn. Gen. Stat. § 20-9(a) violated her rights under the First Amendment.

11

practicing "Nedicine," and were "interfering with [her] occupation." *See* Complaint at 5, 35, *Jackson I*, 15-CV-750 (CSH), ECF No. 1 ("Plaintiff has suffered an economic injury because a state statute precludes her from practicing her profession in violation of rights secured by the federal constitution."). In dismissing her complaint, Judge Haight concluded that she had not established that she had a constitutional or statutory right to practice Nedicine. *See Jackson I*, 2016 WL 3460304, at *18–19 ("[Plaintiff] has not been deprived of any right secured by the Constitution or federal statute . . . . Only those individuals who are issued Connecticut state licenses to practice medicine may 'diagnose, treat, operate for or prescribe for any injury, deformity, ailment or disease . . . in kind of branch of practice stated in such license.' Conn. Gen. Stat. § 20-9(a)."). In other words, in *Jackson I*, she alleged that the same statute she now challenges unconstitutionally prevented her from engaging in the same conduct she now seeks to engage in—the practice of "Nedicine." Nothing in her complaint suggests that any aspect of her claims arose after the commencement of *Jackson I*. The fact that DPH subsequently confirmed that Ms. Jackson's conduct violated Conn. Gen. Stat. § 20-9(a) is thus immaterial to the nature of her cause of action. *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38–39 (2d Cir. 1992) (noting that "[w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first," and finding that the "district court correctly determined that the present action involves the same transactions, and therefore the same cause of action, for res judicata purposes," because "[t]he factual predicates . . . were the same" and "the same underlying occurrence was relevant to both . . . claims."). Ms. Jackson does not allege that her religious beliefs are new, nor does she explain why she declined to make any mention of them in litigating *Jackson I*. If Ms. Jackson believed that DPH's enforcement action

violated her rights under the First Amendment in addition to her rights under the Fourteenth Amendment as she originally claimed, she could have raised that argument in her first lawsuit. Her current claim that DPH's enforcement activities are interfering with the exercise of her religion was ripe when she filed the *Jackson I* lawsuit—every bit as ripe as her claim in that case that those activities were "interfering with her occupation." *Jackson* I, 2016 WL 3460304 at *7. She cannot relitigate her case simply by arguing that the same operative facts caused her a different type of constitutional injury than the one she alleged before where her newly-alleged injury existed at the time of her earlier suit.

## IV. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss (ECF No. 16) is GRANTED. The Plaintiff's motion for preliminary injunction (ECF No. 2) is DENIED as moot. The complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         May 21, 2019